**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JAMES LAWRENCE QUINNEY,

      Petitioner,          Civil No. 2:16-CV-11351
                           HONORABLE DENISE PAGE HOOD
v.                       CHIEF UNITED STATES DISTRICT JUDGE

DEWAYNE BURTON,

      Respondent.
_____/

# OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS*

James Lawrence Quinney, ("Petitioner"), confined at the Richard A. Handlon Correctional Facility in Ionia, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for first-degree home invasion, M.C.L.A. § 750.110a(2), assault with a dangerous weapon (felonious assault), M.C.L.A. § 750.82, interfering with a crime report, M.C.L.A. § 750.483a(2)(b), and assault and battery, M.C.L.A. § 750.81. For the reasons that follow, the petition for a writ of habeas corpus is DENIED.

## I. Background

Sabriah and Hail Al-Chimamlah lived in an apartment in Detroit, on the ninth floor. Helen Deshazer lived a few doors down from the Al-Chimamlahs and would come by occasionally for money or food, which the Al-Chimamlahs would give her. The Al-Chimamlahs have a son who was saving money. He would give them the money which was kept in a bank envelope in a couch cushion.

On May 15, 2011, Helen Deshazer showed up unannounced to the Al-Chimamlahs' apartment while Hail was counting the money that was stashed in the couch cushion. She walked in the front door, which they always kept unlocked. When Hail saw her, he quickly put the money back. The money totaled over $ 19,000 in cash, and no one, other than the Al-Chimamlahs and Deshazer, knew where it was kept. (T. 12/7/2011, pp. 59, 65-69, 78, 97-98).

Petitioner, who sold DVDs, is a friend of Helen Deshazer and came to her apartment two to three times a week. (T. 12/8/2011, pp. 88-89). He was there on May 17, 2011. (*Id.*, at 90). Deshazer testified that she told petitioner, on May 17, 2011, that the Al-Chimamlahs had money and would probably buy some of his DVDs. (*Id.*, at 91-92).

On May 17, 2011, at 8:30 p.m., two men forced their way into the Al-Chimamlahs' apartment.  Sabriah was in the living room and Hail was in the kitchen.  The person that Sabriah identified as petitioner went straight to a sofa and took the money which she kept in a bank envelope hidden in a cushion.  The other man pushed Hail down in the kitchen, pulled the intercom from the wall, struck Hail with the intercom and stabbed him in the chest and arm with a knife.  Petitioner struck Sabriah one time on her cheek with his hand as she struggled to recover the money.  Both men exited the apartment with the money. (T. 12/7/2011, pp. 59-65, 68-71, 78, 86-87, 102, T. 12/8/2011, pp. 22-23).

While struggling with her assailant, Sabriah testified that she was "face-to-face with him" and "got a good look at him." (T. 12/7/2011, p. 68). She testified that her assailant wore "a black coat and pants, and the hoodie was on him."

Petitioner signed into the apartment complex at 7:25 p.m., indicating that he was there to see Deshazer. (T. 12/12/2011, pp. 43-44).  The lobby guard remembered seeing a person, matching Sabriah's description of petitioner, come and sign in as "Que."  The man never signed out. (*Id.,* p. 70-71).  Deshazer testified that petitioner and two other men were with her

in her apartment that night smoking crack. She further testified that petitioner was there for 15 or 20 minutes, left, and came back a couple of hours later to spend the night with his girlfriend. (T. 12/8/2011, pp. 93-97). Petitioner was found and arrested in Deshazer's apartment the next morning, wearing a black hoodie and black pants.

Petitioner's conviction was affirmed on appeal. *People v. Quinney*, No. 308407, 2013 WL 2319479 (Mich. Ct. App. May 28, 2013); *lv. den.* 495 Mich. 867; 843 N.W.2d 149 (2013).

Petitioner then filed a post-conviction motion for relief from judgment, which was denied. *People v. Quinney,* No. 11-005434 (Third Cir. Ct., Criminal Division, Aug. 18, 2014). The Michigan appellate courts denied petitioner leave to appeal. *People v. Quinney*, No. 324834 (Mich.Ct.App. Jan. 16, 2015); *lv. den.* 499 Mich. 854; 873 N.W.2d 950 (2016).

Petitioner seeks a writ of habeas corpus on the following grounds:

I.      [Petitioner] was denied a fair trial by admission of a photo photographic lineup conducted while he was in custody with no independent basis for the in-court identification.

II.     Due process mandates that [petitioner's] convictions for assault with intent to [do] great bodily harm, felonious assault and interfering with a crime report must be vacated, as there was no evidence that he committed these offenses, either as principle or aider

and abettor.

III.    Mr. Quinney is entitled to a new trial where he was denied state and federal due process rights where his convictions were obtained through the prosecutor using false and/or perjured testimony from Officer Drake[.] Defense and trial counsel was constitutionally ineffective in failing to object.

IV.    Mr. Quinney was denied his constitutional right to the effective assistance of counsel because his attorney failed to challenge the misleading testimony concerning the photo line-up and when counsel failed to call an expert witness in violation of the Sixth Amendment of the United States Constitution.

V.    Mr. Quinney was denied the effective assistance of appellate counsel in violation of the defendant's Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

VI.    Petitioner's state and federal constitutional rights were violated when he was illegally arrested in a private residence without a warrant and absent any probable cause.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the

claim–

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing

*Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to

obtain habeas relief in federal court, a state prisoner is required to show

that the state court's rejection of his or her claim "was so lacking in

justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement."

*Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief

as long as it is within the "realm of possibility" that fairminded jurists could

find the state court decision to be reasonable. *See Woods v. Etherton,* 136

S. Ct. 1149, 1152 (2016).

## III. Discussion

### A. Claim # 1. The photographic lineup claim.

Petitioner alleges that he was denied due process when the trial

court admitted a photo from the photographic line-up, which petitioner

argues should have been suppressed because he was in custody and

available for a corporeal lineup.

Petitioner argues that improper suggestion and the inaccuracy of

eyewitness identification made the photo lineup the least reliable

identification procedure.

The Michigan Court of Appeals, in rejecting petitioner's claim, found:

> Generally, photographic identification procedures should not be used when a defendant is in custody. Certain circumstances, however, provide legitimate reasons to use a photographic lineup instead of a corporeal lineup, such as, "where the nature of the case requires immediate identification," or "where there are insufficient numbers of persons available with the defendant's physical characteristics[.]"
>
> At the evidentiary hearing, Detroit Police Sergeant Manny Gutierrez testified that a photographic lineup was used because there were "no individuals in the facilities" that they could use for a corporeal lineup "that would at least be comparable to Mr. Quinney." Detroit Officer Terry Cross–Nelson testified that he called three precincts in his search for persons to participate in a corporeal lineup. Officer Cross–Nelson looked for persons that shared common physical characteristics with defendant, including weight, height, and age, but was unable to find a sample of prisoners to place in a corporeal lineup with defendant. Officer Cross–Nelson and Sergeant Gutierrez also testified that they were working under certain time restraints during that investigation. According to both officers, the Department of Justice mandates that the Detroit Police Department process prisoners within 48 hours of arrest. And as the trial court noted, arraignments do not occur at all times during the day or week, which placed greater temporal limitations on the investigation. Given these circumstances, legitimate reasons existed to use a photographic lineup. The police made reasonable efforts to arrange a proper corporeal lineup but there were insufficient similar persons available that matched defendant's description. Accordingly, the trial court did not clearly err by admitting evidence of the photographic lineup.

*People v. Quinney*, 2013 WL 2319479, at *1 (internal citation omitted).

Due process protects the accused against the introduction of

evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). However, to determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. *Neil v. Biggers*, 409 U.S. 188 (1972). Five factors should be considered in determining the reliability of identification evidence: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the defendant; (4) the witness's level of certainty when identifying the suspect at the confrontation; and (5) the length of time that has elapsed between the time and the confrontation. *Id.* at 199-200.

A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive. It is only after a defendant meets this burden of proof that the burden then shifts to the prosecutor to prove that the identification was reliable, independent of the suggestive identification procedure. *See United States v. Wade*, 388 U.S.

218, 240, n. 31 (1967).  If a defendant fails to show that the identification

procedures were impermissibly suggestive, or if the totality of the

circumstances indicates that the identification is otherwise reliable, no due

process violation has occurred.  As long as there is not a substantial

likelihood of misidentification, it is for the jury to determine the ultimate

weight to be given to the identification. *See United States v. Hill*, 967 F.2d

226, 230 (6th Cir.1992).

A defendant does not have a constitutional right to a corporeal

line-up.  Instead, his request is addressed to the trial court's sound

discretion. *See Mitchell v. Vasbinder*, 644 F. Supp. 2d 846, 866 (E.D.

Mich. 2009); *Payne v. Smith,* 207 F .Supp. 2d 627, 645 (E.D. Mich. 2002).

Thus, "the government is not required to conduct a lineup...and the

availability of time for a lineup plays no part in determining whether a

photographic spread is impermissibly suggestive." *United States v.

Causey*, 834 F.2d 1277, 1286 (6th Cir. 1987).

Petitioner contends that the photographic array was unduly

suggestive, but has submitted no evidence to either the Michigan courts or

this Court in support of his claim.  Conclusory allegations by a habeas

petitioner, without any evidentiary support, do not provide a basis for

habeas relief. *See, e.g., Washington v. Renico,* 455 F.3d 722, 733 (6th

Cir. 2006).  Petitioner has provided no copies of the actual photographic

array nor has he given any reasons why the array was unduly suggestive.

Petitioner is not entitled to habeas relief because his claim that the photo

array was unduly suggestive is conclusory and unsupported. *See Champ*

*v. Zavaras*, 431 F. App'x 641, 654 (10th Cir. 2011).

Assuming that the pre-trial identification procedures were unduly

suggestive, petitioner has failed to show, under the totality of

circumstances, that the suggestiveness led to a substantial likelihood of an

irreparable misidentification.  Sabriah Al-Chimamlah testified that

petitioner and another man forced their way into her apartment.  The other

man went into the kitchen, ripped the intercom off the wall and assaulted

her husband.  Ms. Al-Chimamlah testified that petitioner slapped her and

struggled with her over the money contained in a bank envelope. (T.

12/7/2011, pp. 64, 68).  Ms. Al-Chimamlah testified that she "got a good

look" at the perpetrator. (*Id.,* p. 68)  These factors all support a finding that

an independent basis existed for her in-court identification of petitioner.

*See Robertson v. Abramajtys,* 144 F. Supp. 2d 829, 847 (E.D. Mich.

2001).  Courts tend to "place greater trust in witness identifications made

during the commission of a crime because the witness has a reason to pay attention to the perpetrator." *Howard v. Bouchard,* 405 F.3d 459, 473 (6th Cir. 2005). *See also United States v. Crozier*, 259 F.3d 503, 511 (6th Cir. 2001)(finding heightened degree of attention where robber confronted witnesses with a gun). In light of the fact that Sabriah Al-Chimamlah struggled with petitioner over the money, it was not unreasonable to conclude that she paid a high degree of attention to her assailant. Finally, the reliability of the victim's in-court identification is supported by the fact that she "testified without equivocation" that the petitioner was her assailant. *Howard,* 405 F.3d at 473. Petitioner is not entitled to habeas relief on his first claim.

### B. Claim # 2. The sufficiency of the evidence claim.

Petitioner next claims that there was insufficient evidence to convict him of the crimes, either as a principal or as an aider and abetter.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is,

"whether the record evidence could reasonably support a finding of guilt

beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318

(1979).  This inquiry, however, does not require a court to "ask itself

whether *it* believes that the evidence at the trial established guilt beyond a

reasonable doubt."  Instead, the relevant question is whether, after viewing

the evidence in the light most favorable to the prosecution, *any* rational

trier of fact could have found the essential elements of the crime beyond a

reasonable doubt. *Id.* at 318-19 (internal citation and footnote

omitted)(emphasis in the original).

A federal habeas court may not overturn a state court decision that

rejects a sufficiency of the evidence claim merely because the federal

court disagrees with the state court's resolution of that claim.  Instead, a

federal court may grant habeas relief only if the state court decision was

an objectively unreasonable application of the *Jackson* standard. *See

Cavazos v. Smith,* 565 U.S. 1, 2 (2011).  "Because rational people can

sometimes disagree, the inevitable consequence of this settled law is that

judges will sometimes encounter convictions that they believe to be

mistaken, but that they must nonetheless uphold." *Id.*  For a federal

habeas court reviewing a state court conviction, "the only question under

*Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).  A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Petitioner claims that the prosecutor offered no evidence to prove, beyond a reasonable doubt, that petitioner actually took part in or encouraged the offenses committed by the other person.  Petitioner claims that he struck Sabriah Al-Chimamlah when she confronted him while he was taking the money, but argues that he was merely present and that he did not do or say anything at the crime scene, or in relation to the crimes, to encourage the offenses committed by the other person.

To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

> 1. the crime charged was committed by the defendant or some other person;
> 2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and
> 3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

*Riley v. Berghuis,* 481 F.3d 315, 322 (6th Cir. 2007)(citing *People v.*

*Carines,* 460 Mich. 750, 597 N.W.2d 130, 135 (1999).

In order to be guilty of aiding and abetting under Michigan law, the accused must take some conscious action designed to make the criminal venture succeed. *See Fuller v. Anderson,* 662 F.2d 420, 424 (6th Cir. 1981). Aiding and abetting describes all forms of assistance rendered to the perpetrator of the crime and includes all words or deeds which might support, encourage, or incite the commission of the crime. *People v. Turner*, 213 Mich. App. 558, 568; 540 N.W.2d 728 (1995). The quantum or amount of aid, advice, encouragement, or counsel rendered, or the time of rendering, is not material if it had the effect of inducing the commission of the crime. *People v. Lawton*; 196 Mich. App. 341, 352; 492 N.W.2d 810 (1992). Finally, the Michigan Supreme Court has held that there is no language in Michigan's aiding and abetting statute that shows an intent by the Michigan Legislature "to abrogate the common-law theory that a defendant can be held criminally liable as an accomplice if: (1) the defendant intends or is aware that the principal is going to commit a specific criminal act; or (2) the criminal act committed by the principal is an 'incidental consequence[ ] which might reasonably be expected to result from the intended wrong.'" *People v. Robinson,* 475 Mich. 1, 9; 715

N.W.2d 44 (2006)(quoting Perkins, Criminal Law (3d ed.), pp. 741-43, 745).

To be convicted of aiding and abetting, the defendant must either possess the required intent to commit the crime or have participated while knowing that the principal had the requisite intent; such intent may be inferred from circumstantial evidence. *See Long v. Stovall,* 450 F. Supp. 2d 746, 753 (E.D. Mich. 2006); *People v. Wilson*, 196 Mich. App. 604, 614; 493 N.W.2d 471 (1992).  The intent of an aider and abettor is satisfied by proof that he knew the principal's intent when he gave aid or assistance to the principal. *People v. McCray*, 210 Mich. App. 9, 14; 533 N.W.2d 359 (1995).  An aider and abettor's state of mind may be inferred from all of the facts and circumstances, including close association between the defendant and the principal, the defendant's participation in the planning and execution of the crime, and evidence of flight after the crime. *Turner,* 213 Mich. App. at 568-69.

Petitioner claims that there was no evidence that he aided and abetted the accomplice in the first-degree home invasion, assault with a dangerous weapon (felonious assault), interfering with a crime report, or the assault and battery.

The elements of first-degree home invasion contained in M.C.L.A. § 750.110a(2) are as follows:

> A person who breaks and enters a dwelling with intent to commit a felony or a larceny in the dwelling or a person who enters a dwelling without permission with intent to commit a felony or a larceny in the dwelling is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:
>
> (a) The person is armed with a dangerous weapon.
> (b) Another person is lawfully present in the dwelling.

Michigan's first-degree home invasion statute includes all of the elements of the burglary of a dwelling, but also requires that the defendant be armed with a dangerous weapon and/or that the dwelling be occupied. *See Johnson v. Warren,* 344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004)(citing *United States v. Garcia-Serrano,* 107 F. App'x 495, 496-97 (6th Cir. 2004)).  The term "without permission" is defined by Michigan law as "without having obtained permission to enter from the owner or lessee of the dwelling or from any other person lawfully in possession or control of the dwelling." M.C.L.A. § 750.110a(1)©.  To amount to a breaking under Michigan law, "[s]ome force, no matter how slight, must be used to gain entry." *People v. Kedo*, 108 Mich. App. 310, 318; 310 N.W.2d 224 (1981); *see also People v. Toole,* 227 Mich. App. 656, 659; 576 N.W.2d 441

(1998). The intent element may reasonably be inferred from the nature, time, and place of a defendant's acts before and during the breaking and entering of the dwelling. *See People v. Uhl*, 169 Mich. App. 217, 220; 425 N.W.2d 519 (1988).

Under Michigan law, the elements of assault with a dangerous weapon are: (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery. *See Gardner v. Kapture,* 261 F. Supp. 2d 793, 804 (E.D. Mich. 2003)(citing *People v. Lawton,* 196 Mich. App. 341, 349; 492 N.W.2d 810 (1992)).

To establish that a defendant is guilty of interfering with a crime report, the prosecution must prove that: "(1) a defendant prevented or attempted to prevent, (2) through the unlawful use of physical force, (3) someone from reporting a crime committed or attempted by another person." *People v. Holley*, 480 Mich. 222, 228; 747 N.W.2d 856 (2008); M.C.L.A. § 750.483a(2)(b).

Under Michigan law, an assault is defined as an attempt to commit a battery or an unlawful act which places another person in reasonable apprehension of receiving an immediate battery. *Bletz v. Gribble*, 641 F.3d

18

743, 757 (6th Cir. 2011).

The Michigan Court of Appeals in rejecting petitioner's argument

reasonably found:

> A rational trier of fact could infer from these circumstances that defendant intended to support, encourage, or incite his accomplice's actions before and after disabling the intercom. Given the deliberate and swift manner in which defendant and his accomplice entered and executed the theft, it is reasonable to conclude that the assailants had a preconceived plan; defendant would locate the money while the unidentified accomplice would disable the intercom, which would prevent the residents from reporting the theft. By focusing his attention on locating the money, defendant provided his accomplice with the opportunity to disable the intercom. Further, the trier of fact could have also reasonably inferred from the evidence that defendant provided his accomplice with information about the intercom system before they entered the apartment, as defendant was familiar with the apartment building and its units. On several occasions before the incident, defendant visited the apartment building, and it would be reasonable to conclude from that evidence that defendant learned about the intercom system during those visits.

*People v. Quinney*, 2013 WL 2319479, at *3.

The record clearly reflects that petitioner and his accomplice planned

and then swiftly carried out the home invasion at the Al-Chimamlahs'

apartment.  Petitioner often visited the complex, knew of the intercom

system, and knew another resident, by the name of Helen Deshazer.

Sabriah Al-Chimamlah testified that Deshazer saw the money taken from

the cushion when she entered the Al-Chimamlah apartment unannounced,

two days before the crime. A lobby guard testified that he saw petitioner sign in the night of the robbery. Petitioner was arrested the following day in Helen Deshazer's apartment.

In light of the evidence presented, the Michigan Court of Appeals did not unreasonably apply clearly established federal law in determining that the evidence was sufficient to convict petitioner of first-degree home invasion, assault with a dangerous weapon, interfering with a crime report, and assault and battery, on an aiding and abetting theory. *See Brown v. Konteh,* 567 F.3d 191, 209-12 (6th Cir. 2009). In particular, "in light of the strong circumstantial evidence" that petitioner "was involved in the planning and execution of" these crimes, "at least one 'rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt.'" *Davis v. Lafler*, 658 F.3d 525, 535 (6th Cir. 2011) (quoting *Jackson v. Virginia*, 443 U.S. at 319 (additional citation omitted)). Moreover, when petitioner's case is reviewed pursuant to the AEDPA's "double deference" standard, this Court is unable to state that the Michigan Court of Appeals' decision, that there was sufficient evidence to convict petitioner under an aiding and abetting theory, was "so far out of line with the very general standard set forth in *Jackson v. Virginia* as to

warrant granting [petitioner] habeas relief." *Id.* Petitioner is not entitled to

habeas relief on his second claim.

## C. Claims ## 3, 4, 5, and # 6. The procedurally defaulted claims.

Respondent contends that petitioner's remaining claims are

procedurally defaulted for various reasons.

When the state courts clearly and expressly rely on a valid state

procedural bar, federal habeas review is also barred unless petitioner can

demonstrate "cause" for the default and actual prejudice as a result of the

alleged constitutional violation, or can demonstrate that failure to consider

the claim will result in a "fundamental miscarriage of justice." *Coleman v.*

*Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show

cause for his procedural default, it is unnecessary for the court to reach

the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However,

in an extraordinary case, where a constitutional error has probably

resulted in the conviction of one who is actually innocent, a federal court

may consider the constitutional claims presented even in the absence of a

showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478,

479-80 (1986). However, to be credible, such a claim of innocence

requires a petitioner to support the allegations of constitutional error with

new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998).

Respondent contends that petitioner's third and fourth claims are procedurally defaulted because petitioner raised these claims for the first time in his post-conviction motion, and failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by M.C.R. 6.508(D)(3).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989).  If the last state court judgment contains

no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." This order, however, did not refer to subsection (D)(3) nor did it mention petitioner's failure to raise his third and fourth claims on his direct appeal as a rationale for rejecting his post-conviction claims. Because the Michigan Supreme Court form order in this case citing Rule 6.508(D) is ambiguous as to whether it refers to procedural default or a denial of post-conviction relief on the merits, the order is unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id.*

The Michigan Court of Appeals denied petitioner's post-conviction appeal holding that "The defendant alleges grounds for relief that could

23

have been raised previously and he has failed to establish both good cause for failing to previously raise the issues and actual prejudice from the irregularities alleged, and has not established that good cause should be waived. MCR 6.508(D)(3)(a) and (b)." *People v. Quinney,* No. 324834 (Mich.Ct.App. Jan. 16, 2015).  The Michigan Court of Appeals clearly denied petitioner post-conviction relief based on the procedural grounds stated in M.C.R. 6.508(D)(3), thus, petitioner's third and fourth claims are procedurally defaulted pursuant to M.C.R. 6.508(D)(3). *See Ivory v. Jackson,* 509 F.3d 284, 292-93 (6th Cir. 2007). *See also Howard v. Bouchard,* 405 F.3d 459, 477 (6th Cir. 2005).

In his fifth claim, petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default for failing to raise these claims on his appeal of right.[1]  Petitioner, however, has not shown that appellate counsel was ineffective.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous

---

[1] Petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette*, 624 F.3d at 291; *Hicks v. Straub*, 377 F.3d 538, 558, n. 17 (6th Cir. 2004).  However, for the reasons stated below, petitioner is not entitled to habeas relief on this claim.

issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The

United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments
> and impose on appointed counsel a duty to raise every
> "colorable" claim suggested by a client would disserve the ... goal
> of vigorous and effective advocacy.... Nothing in the Constitution
> or our interpretation of that document requires such a standard.

*Id.* at 463 U.S. at 754.

> The Supreme Court has subsequently noted that:

> Notwithstanding *Barnes*, it is still possible to bring a *Strickland* [2]
> claim based on [appellate] counsel's failure to raise a particular
> claim [on appeal], but it is difficult to demonstrate that counsel
> was incompetent.

*Smith v. Robbins,* 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on

appeal are "properly left to the sound professional judgment of counsel."

*United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the

hallmark of effective appellate advocacy" is the "process of 'winnowing out

weaker arguments on appeal and focusing on' those more likely to

prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at

751-52). "Generally, only when ignored issues are clearly stronger than

those presented will the presumption of effective assistance of appellate

---

[2] *Strickland v. Washington,* 466 U.S. 668 (1984).

counsel be overcome." *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that he raised for the first time in his post-conviction motion for relief from judgment. Appellate counsel filed an twelve page appellate brief which raised the first two claims that petitioner raises in his current petition.[3] Petitioner has not shown that appellate counsel's strategy in presenting these two claims and not raising other claims was deficient or unreasonable. For the reasons stated by the Assistant Michigan Attorney General in his answer to the petition for a writ of habeas corpus, the claims that were raised by petitioner in his post-conviction motion were not "dead bang winners." Because these claims were not "dead bang winners," petitioner has failed to establish cause for his

---

[3] *See* Defendant-Appellant's Brief on Appeal. [This Court's Docket Entry # 7-25].

procedural default of failing to raise his claims on direct review. *See McMeans v. Brigano,* 228 F.3d 674, 682-83 (6th Cir. 2000).

Because the third and fourth claims lack merit, this Court must reject any independent ineffective assistance of appellate counsel claim raised by petitioner. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

Respondent contends that petitioner's sixth claim is procedurally defaulted because petitioner failed to exhaust this claim with the state courts and no longer has an available remedy with which to do so.

As a general rule, a state prisoner seeking federal habeas relief must first exhaust his available state court remedies before raising a claim in federal court. 28 U.S.C. § 2254(b) and (c); *Picard v. Connor*, 404 U. S. 270, 275-78 (1971). A petition for a writ of habeas corpus filed by a state prisoner shall not be granted unless the petitioner has exhausted his available state court remedies, there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the petitioner's rights. *See Turner v. Bagley,* 401 F.3d

718, 724 (6th Cir. 2005).

Unfortunately, petitioner no longer has any available state court remedies with which to exhaust this claim. Under M.C.R. 6.502(G)(1), a criminal defendant in Michigan is only permitted to file one post-conviction motion for relief from judgment. *See Gadomski v. Renico,* 258 F. App'x 781, 783 (6th Cir. 2007); *Hudson v. Martin*, 68 F. Supp. 2d 798, 800 (E.D. Mich. 1999). Petitioner has no remaining state court remedies with which to exhaust his claim. If a prisoner fails to present his claims to the state courts and he is now barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust. However, the prisoner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal. *Hannah v. Conley*, 49 F.3d 1193, 1195-96 (6th Cir. 1995). A claim of actual innocence will excuse this "cause and prejudice" requirement. *Id.* at 1196, n. 3.

Petitioner has failed to establish cause to excuse his default. While ineffective assistance of appellate counsel might excuse petitioner's failure

to raise this claim on his direct appeal, it does not excuse petitioner's own failure to correctly exhaust this claim in his post-conviction motion for relief from judgment. *See Gadomski v. Renico*, 258 F. App'x at 784.

Petitioner failed to establish cause for his procedural defaults. It is therefore unnecessary to reach the prejudice issue regarding his defaulted claims. *Smith*, 477 U.S. at 533; *see also Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003). Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider petitioner's remaining claims as grounds for a writ of habeas corpus in spite of the procedural default. Petitioner's sufficiency of evidence claim is insufficient to invoke the actual innocence doctrine to the procedural default rule. *Malcum,* 276 F. Supp. 2d at 677. Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if this Court declines to review petitioner's procedurally defaulted claims on the merits. *Id.*

Petitioner's remaining claims are procedurally defaulted.

## IV. Conclusion

The Court will deny the petition for a writ of habeas corpus.

A habeas petitioner must receive a certificate of appealability

("COA") in order to appeal the denial of a habeas petition for relief from

either a state or federal conviction.[4]  28 U.S.C. §§ 2253(c)(1)(A), (B).  A

court may issue a COA "only if the applicant has made a substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When a federal district court rejects a habeas claim on the merits, the

substantial showing threshold is met if the petitioner demonstrates that

reasonable jurists would find the district court's assessment of the

constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S.

473, 484-85 (2000).  Likewise, when a district court denies a habeas

petition on procedural grounds without reaching the prisoner's underlying

constitutional claims, a certificate of appealability should issue, and an

appeal of the district court's order may be taken, if the petitioner shows

that jurists of reason would find it debatable whether the petitioner states a

valid claim of the denial of a constitutional right, and that jurists of reason

would find it debatable whether the district court was correct in its

---

[4]  Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254
Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must
issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a),
28 U.S.C. foll. § 2254; *see also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

procedural ruling. *Id.* at 484.  When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further.  In such a circumstance, no appeal would be warranted. *Id.*

This Court denies a certificate of appealability because reasonable jurists would not find this Court's assessment of the claims to be debatable or wrong. *See Slack v. McDaniel*, 529 U.S. at 484.

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing *United States v. Youngblood*, 116 F.3d 1113, 1115 (5th Cir. 1997)).  Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208

F. Supp. 2d at 765.  Although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *Id.*

## V.  ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** That a certificate of appealability is

**DENIED.**

**IT IS FURTHER ORDERED** that petitioner will be granted leave to appeal *in forma pauperis.*

> **S/Denise Page Hood**
> **Denise Page Hood**
> **Chief Judge, United States District Court**

**Dated:  June 29, 2018**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on June 29, 2018, by electronic and/or ordinary mail.**

> **S/LaShawn R. Saulsberry**
> **Case Manager**